IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ANGELA SMITH                      :      CIVIL ACTION
                                  :
        v.                        :
                                  :
STATE FARM MUTUAL AUTOMOBILE      :
INSURANCE COMPANY                 :      NO. 11-7589


                            MEMORANDUM


McLaughlin, J.                                February 16, 2012


          This case was originally filed on November 16, 2011 in

the Court of Common Pleas of Philadelphia County and arises out

of the plaintiff's auto insurance policy with the defendant.  The

plaintiff alleges that she was not adequately paid under her

policy's underinsured motorist provision after she submitted

claims arising out of an accident in February, 2010.  She brings

claims against State Farm for bad faith, violation of

Pennsylvania consumer protection law, and breach of contract.

The defendants have moved to dismiss all claims except for that

part of the breach of contract claim relating to amounts not paid

up to the coverage limit of the insurance policy.  The Court will

grant the motion.


I.    Allegations of the Complaint

          The plaintiff was in an automobile accident in

Northeast Philadelphia on February 24, 2010 and suffered injuries

and losses as a result of the negligence of Brian Griffaton
("Griffaton"), whose car struck Angela Smith's ("Smith") as it
was waiting at a stoplight.  Compl. ¶¶ 4-8.

      Smith's vehicle was covered by an insurance policy
issued by State Farm, and Smith was a named insured under that
policy, which provided for Underinsured Motorist Benefits
Coverage ("UIM").  Her State Farm policy provided for a total
amount of $45,000 in "stacked" coverage for UIM claims.  After
the accident, Smith submitted her claim to Griffaton's insurance
carrier, which covered Griffaton in the amount of $15,000, which
was less than the total amount of Smith's losses.  On October 25,
2010, Smith informed State Farm of her claims under her policy's
UIM provision.  State Farm advised Smith that Kevin McDonnell
("McDonnell") would be assigned as Claim Representative to her
UIM claim.  Compl. ¶¶ 9, 10, 12-19; Id. Exs. A-C.

      On November 17, 2010, Griffaton's insurance carrier
tendered $15,000, the full amount of his coverage under his
policy, to Smith.  Smith requested and received consent to settle
with Griffaton from State Farm, which waived its subrogation
rights on December 2, 2010.  Smith's attorney provided McDonnell
with medical records and bills supporting her UIM claim, noted
Smith's first-party medical insurance had been exhausted and left
unpaid bills of $26,474, and sought from State Farm the full
$45,000 policy limit for UIM coverage on December 8, 2010.  On

January 3, 2011, her attorney again demanded $45,000 from State Farm.  Compl. ¶¶ 25-29, 33; Id. Exs. E-G.

McDonnell requested that Smith provide a medical authorization on January 7, 2011, for the purpose of obtaining records from an earlier workers' compensation claim and "pre-loss family doctor records."  The plaintiff provided an authorization on January 26.  On March 22, 2011, the plaintiff sent McDonnell additional medical records from Abraham Medical Associates and again demanded the $45,000 policy limit, providing the defendant thirty days to reply.  McDonnell offered $21,000 to settle the UIM claim on April 13, 2011.  Compl. ¶¶ 34-38; Id. Exs. H-K.

Smith's attorney rejected the offer in a letter dated April 19, 2011.  The letter detailed the medical records provided to State Farm, the diagnostic and therapeutic procedures Smith underwent, and the likely future course of her medical treatment. The letter noted that Smith had no medical insurance to pay $28,000 in outstanding bills and reiterated her demand for $45,000.  The letter provided State Farm twenty days to respond. The following day, McDonnell responded that he was "willing to negotiate" the claim, but did not have authority to settle the claim for the full policy limit.  McDonnell sent Smith, via her attorney, a payment of $21,000 stating that the remaining coverage would be reduced by that amount and that "[r]egardless of the final determination of damage, the amount of our initial

3

offer will be your minimum recovery under the policy." Id. Exs. L-O.

The parties continued to communicate over the next several months.  McDonnell reiterated his lack of authority to settle the claim for the full policy amount.  The plaintiff received an independent medical exam from a neurosurgeon, Dr. Freese, whose report stated that Smith suffered two herniated discs from the accident.  Dr. Freese's report was forwarded to McDonnell on August 19, 2011, along with a restated demand for the remaining $24,000 of coverage under the policy.  McDonnell increased State Farm's offer to $32,225, inclusive of the initial $21,000 payment, on August 25.  Id. Exs. P-R.  The plaintiff then filed suit on November 16, 2011.

The complaint argues that State Farm has in bad faith refused to pay the full amount of the policy and that it lacks a reasonable basis for failing to offer the full $45,000 of coverage.  Smith alleges that State Farm has acted pursuant to a scheme to delay and deny payment of benefits and done so recklessly, willfully, and with deliberate indifference.  Smith brings a claim for bad faith under 42 Pa. Cons. Stat. § 8371 for, among other reasons, failing to investigate her claim and consider evidence supplied in support of it; failing to timely respond to correspondence; making unreasonable offers of

settlement; and misrepresenting facts and its evaluation of her claim.

She brings a claim for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") for, among other reasons:  misrepresentations of the conditions of her policy; inducing Smith to purchase insurance on the belief that her "legitimate claims would be promptly evaluated and paid"; engaging in bad faith settlement practices; and misrepresenting the value of Smith's claim and amount of coverage available.

Finally, Smith brings a claim for breach of contract alleging State Farm's deliberate refusal to pay the full amount of benefits owed under the policy and for failure to engage in good faith and fair dealing.  Smith seeks all statutory damages permitted as well as punitive damages under both Counts I and II; she seeks compensatory, incidental, consequential, and punitive damages in Count III.

II.  Discussion

The plaintiff's factual allegations fail to state a claim for bad faith or deceptive or fraudulent practices under the UTPCPL, and cannot state a claim for anything other than the remaining $24,000 under her coverage limit for breach of the insurance contract.  Because the claim that remains is a claim

for $24,000 of underinsured motorist benefits, the Court will
remand to state court.

    A.  <u>Bad Faith</u>

      To state a claim for bad faith under 42 Pa. Cons. Stat.
§ 8371, the plaintiff must allege facts that show, by clear and
convincing evidence: "(1) that the insurer lacked a reasonable
basis for denying benefits; and (2) that the insurer knew or
recklessly disregarded its lack of reasonable basis." <u>Klinger v.
State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997)
(citing <u>Terletsky v. Prudential Property & Cas. Ins. Co.</u>, 649
A.2d 680, 688 (Pa. Super. Ct. 1994), <u>appeal denied</u>, 659 A.2d 560
(Pa. 1995)).  "Bad faith conduct also includes lack of good faith
investigation into facts, and failure to communicate with the
claimant." <u>Johnson v. Progressive Ins. Co.</u>, 987 A.2d 781, 784
(Pa. Super. Ct. 2009) (citing <u>Condio v. Erie Ins. Exchg.</u>, 899
A.2d 1136, 1142 (Pa. Super. Ct. 2006)).  In <u>Johnson</u>, the court
affirmed a grant of summary judgment for the appellee insurance
company on an insurance bad faith claim.  The insurer "never
denied benefits; rather, the dispute centered upon the measure of
damages." <u>Id.</u> at 785.  The court stated that such a situation
"occurs routinely in the processing of an insurance claim. To
permit this action to proceed under these facts would invite a
floodgate of litigation any time an arbitration award is more

than an insurer's offer to settle, even though the award is substantially below the insured's demand." Id.

The allegations of the complaint and its incorporated exhibits show that the defendant promptly opened a UIM claim; consented to Smith's settlement with Griffaton's insurance carrier; made a settlement offer less than a month after it received Smith's family medical records; tendered the amount of its initial offer within a day of its rejection by the plaintiff; actively solicited follow-up negotiation after payment was made; and increased its offer after receiving the report of the plaintiff's neurosurgeon to nearly three quarters of the policy limit.  The defendant sought and obtained the plaintiff's liability insurance information, medical authorization, affidavit of household insurance, and other records from before the automobile accident, including those relating to a workers' compensation claim from 2009.

The facts adduced by the plaintiff in support of her claim for bad faith, and all reasonable inferences drawn therefrom, do not state a claim for bad faith under Section 8371. The leading Pennsylvania cases make clear that bad faith is a "frivolous or unfounded refusal" to pay benefits, Terletsky, 648 A.2d at 688, or the failure to conduct a good faith investigation or communicate with the claimant.  Condio, 987 A.2d at 784.  The plaintiff acknowledges that disagreement over damages itself will

not support a bad faith claim, but that her allegations regarding
State Farm's "intentional strategy of making low-ball offers
designed to enhance their own financial position at the expense
of their insured" precludes dismissal.  Such an allegation is
conclusory and not supported by any factual averments; it is
merely the plaintiff's characterization of the facts discussed
above.  Similarly, all of the plaintiff's characterizations in
the bad faith count of the complaint are conclusory or
unsupported by the factual averments elsewhere in the complaint
(e.g., State Farm "intentionally misrepresent[ed] coverage,"
"willfully neglect[ed] to consider or process evidence";
"fail[ed] to timely respond to inquiries"; "ma[de] unreasonable
offers of settlement").

        The facts show a dispute over the amount of damages
suffered by the plaintiff in her automobile accident, but do not
demonstrate delay, frivolous refusal to pay the policy proceeds,
or failure to communicate with the plaintiff.  Nor did State Farm
make a firm refusal to pay the remainder of the amount of
coverage under the policy; McDonnell stated his willingness to
engage in follow-up negotiations after State Farm's offer was
increased to $32,225, and the plaintiff filed suit in response.
Under these circumstances, Smith cannot state a claim for
insurance bad faith under Section 8371.

B.    UTPCPL

The defendant argues that Smith has failed to allege that she justifiably relied on any fraudulent or deceptive conduct of the defendant, as required by the Third Circuit's interpretation of the UTPCPL's private-plaintiff standing provision.  The Court agrees and notes that the plaintiff also fails to specify the defendant's conduct that constitutes deception.

A private plaintiff bringing suit under the UTPCPL must allege that she justifiably relied on the defendant's wrongful conduct or representation.  Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222-23 (3d Cir. 2008).  This requirement derives from the statutory requirement that a plaintiff suffer loss "as a result of" the defendant's deception.  Id.  Smith does not identify any misrepresentations on which she relied or could have justifiably relied.

The complaint alleges that several actions by State Farm constitute fraudulent or deceptive conduct.  Smith alleges that State Farm misrepresented the conditions of her UIM coverage; misstated the value of and the promptness with which it would respond to her claim; violated fiduciary and contractual duties owed to her; failed to comply with Pennsylvania statutes governing insurers; and published misleading advertising.  The complaint fails to state that Smith relied upon any of these

actions of State Farm.  Nor could have she justifiably relied on the way in which State Farm handled her claim.  On "issues such as liability, damages, coverage or even procedure, [UIM] claims . . . are inherently and unavoidably arm's length and adversarial."  Zappile v. Amex Assur. Co., 928 A.2d 251, 256 (Pa. Super. Ct. 2007) (quoting Condio, 899 A.2d at 1143-44).  The plaintiff's opposition to the Motion to Dismiss does not discuss justifiable reliance.  In short, Smith alleges no facts even suggesting that she took any action in reliance on or in response to any action taken by the defendant.  She does not allege that any State Farm advertising was material to her decision to purchase UIM coverage.

In addition, the plaintiff also alleges that State Farm "engaged in fraudulent conduct," which triggers a heightened burden to allege with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  This requires the plaintiff to state "the who, what, when, where, and how of the events at issue."  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (internal quotations omitted).  The plaintiff's opposition suggests that the complaint alleges both fraudulent conduct and deceptive conduct.  Given the correspondence between the parties attached to the complaint and despite Smith's repeated conclusory statements to the contrary, it is unclear what conduct State Farm engaged in that deceived or

10

defrauded Smith.  The plaintiff makes no allegation that the defendant said it would pay the full amount of coverage and then did not.

To the extent that the plaintiff's complaint stems from the defendant's refusal to pay the full amount of her UIM claim, such "nonfeasance," as opposed to "malfeasance," or the improper performance of contractual duties, is not actionable under the UTPCPL.  Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995).

Whether or not Smith can properly plead facts showing that State Farm engaged in conduct creating a likelihood of confusion or misunderstanding, however, her failure to allege justifiable reliance deprives her of standing to bring a UTPCPL claim.

C.   Breach of Contract

The plaintiff seeks "compensatory, incidental, and consequential damages" as well as fees, costs, interest, and punitive damages in Count III.[1]  The defendant seeks to dismiss all claims under the contract for amounts other than the $24,000 the defendant has not paid under the coverage limit.  The law in

---

[1] Count III also states that State Farm was "unjustifiably enriched" at Smith's expense but a claim of unjust enrichment is inapplicable where a contract exists between the parties.  Wilson Area School Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006).

Pennsylvania is that incidental and consequential damages are recoverable for breach of contract if they are a natural result of breach, were reasonably foreseeable and contemplated by the party, and provable with reasonable certainty. <u>Ferrer v. Trustees of the Univ. of Pa.</u>, 825 A.2d 591, 610 (Pa. 2002) (citing <u>Taylor v. Kaufhold</u>, 84 A.2d 347, 351 (Pa. 1951)). This is so "unless the contract provided otherwise." <u>Id.</u>

Here, the insurance policy's UIM provision provides that State Farm shall pay "compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle." Policy at 24, Def. Mot. Ex. 2.[2] Further, the policy contains a limitation stating that "[r]egardless of the amount of any award, including any judgment or default judgment, we [State Farm] are not obligated to pay any amount in excess of the available limits under the coverage of this policy." <u>Id.</u> at 25.

The Court can find no case permitting the recovery of consequential damages in Pennsylvania in the presence of a liability limitation such as the one present here. The clear language of the policy precludes payment for anything other than the amount Smith would have been entitled to recover from the tortfeasor, and in no amount greater than the stacked policy

---

[2] The court may consider "indisputably authentic documents underlying the plaintiff's claims." <u>Sentinel Trust Co. v. Univ. Bonding Ins. Co.</u>, 316 F.3d 213, 216 (3d Cir. 2003).

limit of $45,000.  Under Pennsylvania law, the standard measure of damages is that sufficient "to protect an injured party's expectation interest" and that place that party in as good a position as if the contract had been performed.  ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 669 (3d Cir. 1998). Full performance of the contract here would entitle the plaintiff to $45,000, of which $21,000 has been paid.  Expectation damages for breach of contract here would thus be $24,000.

Recovery of attorney's fees is not available on a breach of contract claim unless a statute, agreement of the parties, or some other exception so provides.  Knecht, Inc. v. United Pacific Ins. Co., 860 F.2d 74, 80 (3d Cir. 1988).  The agreement does not provide for attorney's fees, no statute provides for recovery of attorney's fees on a breach of contract claim, and no recognized exception to the rule in contract cases is present here.

Finally, punitive damages are not recoverable under a breach of contract claim; Pennsylvania courts find these damages to be "inconsistent with traditional contract theories," particularly in the insurance context.  DiGregorio v. Keystone Health Plan East, 840 A.2d 361, 370 (Pa. Super. Ct. 2003) (citing Thorsen v. Iron & Glass Bank, 476 A.2d 928 (Pa. Super. Ct. 1984)).

Because the claim for contract damages that remains is for an amount insufficient to confer jurisdiction, the Court will remand the case to the Court of Common Pleas of Philadelphia County.

An appropriate order shall issue.